# RECEIVED

AUG 2 9 2014

CIRCUIT COURT

## STATE OF TENNESSEE
## SUMMONS

**RETURN**
To Circuit Court

### IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE

CASSANDRA RAKOCZY

**Plaintiff**

**Plaintiff**

vs.

SOUTHERN LAND COMPANY, LLC

**Defendant**

NOLAN CHIP BRADLEY

**Defendant**

**Defendant**

CIVIL ACTION No. **2014 - 403**

Service By:
☒ Sheriff
☐ Attorney
☐ Sec. Of State
☐ Comm. Of Insurance

TO SERVE:

Timothy W. Downey
Southern Land Company, LLC
1550 W. McEwen Drive, Suite 200
Franklin, TN 37067

RECEIVED
AUG 27 2014
WARRANTS

**To the above named Defendant:**

You are hereby summoned and required to serve upon ___Theodore Wills___ plaintiff's attorney, whose address is ___750 Old Hickory Blvd, Building Two, Suite 202, Brentwood, TN___ ___37027___, an answer to the complaint which is herewith served upon you within thirty (30) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Witnessed and issued, Debbie McMillan Barrett, Circuit Clerk for said Court, at office this 22 day of *Aug*, 20*14*.

_____
Circuit Court Clerk

### NOTICE:

To the defendant(s): Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the terms you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Mail list, including docket number, to: Circuit Court Clerk, 135 4th Ave South, Franklin, TN 37064.

**EXHIBIT**
A

# 2014-403

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that I served this summons together with the complaint as follows:

Check one: (1) or (2) are for the return of an authorized officer or attorney; an attorney's return must be sworn to; (3) is for the witness who will acknowledge service and requires the witness's signature.

☑ 1.   I certify that on the date indicated below, I served a copy of this summons on the witness stated above by _Personal Service to Timothy W. Downey_

☐ 2.   I failed to serve a copy of this summons on the witness because _____

☐ 3.   I acknowledge being served with this summons on the date indicated below:

DATE OF SERVICE: ___8/24/14___

SIGNATURE OF WITNESS, OFFICER OR ATTORNEY: _____

Clint Esteban
W.C.S.O.
Civil Warrants Division

Signature of Notary Public or Deputy Clerk: _____

Commission Expires: _____

---

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20_____, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case no. _____ to the defendant _____, on the _____ day of _____, 20_____.

I received the return receipt, which had been signed by _____. The return receipt is attached to this original summons to be filed by the Circuit Court Clerk.

_____
Signature

Sworn to and subscribed before me on this ___ day of _____ 20____.

Commission Expires: _____

_____
Signature of Notary Public or Deputy Clerk

---

## CERTIFICATION (IF APPLICABLE)

I hereby certify this to be a true and correct copy of the original summons issued in this case.

_____
CIRCUIT COURT CLERK

For ADA assistance, please call ADA coordinator: 615-790-5428

# STATE OF TENNESSEE
## SUMMONS



## IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE

CASSANDRA RAKOCZY

**Plaintiff**

**Plaintiff**

vs.

SOUTHERN LAND COMPANY, LLC

**Defendant**

NOLAN CHIP BRADLEY

**Defendant**

**Defendant**

CIVIL ACTION NO. **2014 - 403**

Service By:
- ☒ Sheriff
- ☐ Attorney
- ☐ Sec. Of State
- ☐ Comm. Of Insurance

TO SERVE:

Nolan Chip Bradley
4000 Golf Club Lane
Franklin, TN 37064

---

To the above named Defendant:

You are hereby summoned and required to serve upon  Theodore Wills
plaintiff's attorney, whose address is  750 Old Hickory Blvd., Building Two, Suite 202,
Brentwood, TN 37027 , an answer to the complaint which is herewith served
upon you within thirty (30) days after service of this summons upon you,
exclusive of the day of service.  If you fail to do so, judgment by default will be
taken against you for the relief demanded in the complaint.

Witnessed and issued, Debbie McMillan Barrett, Circuit Clerk for said Court,
at office this 22 day of Aug. , 2014 .

_Hico Williams_
Circuit Court Clerk

---

## NOTICE:

**To the defendant(s):** Tennessee law provides a ten thousand dollar ($10,000.00)
personal property exemption from execution or seizure to satisfy a judgment.  If a
judgment should be entered against you in this action and you wish to claim
property as exempt, you must file a written list, under oath, of the terms you wish
to claim as exempt with the clerk of the court.  The list may be filed at any time
and may be changed by you thereafter as necessary;  however, unless it is filed
before the judgment becomes final, it will not be effective as to any execution or
garnishment issued prior to the filing of the list.  Certain items are automatically
exempt by law and do not need to be listed;  these include items of necessary
wearing apparel (clothing) for yourself and your family and trunks or other
receptacles necessary to contain such apparel, family portraits, the family Bible,
and school books.  Should any of these items be seized, you would have the right
to recover them.  If you do not understand your exemption right or how to
exercise it, you may wish to seek the counsel of a lawyer.  Mail list, including
docket number, to:  Circuit Court Clerk, 135 4th Ave South, Franklin, TN 37064.



IN THE _____ CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE AUG 22 PM 2

| | | |
|---|---|---|
| CASSANDRA RAKOCZY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **JURY DEMAND** |
| v. | ) | |
| | ) | Case No. 2014-403 |
| SOUTHERN LAND COMPANY, LLC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NOLAN CHIP BRADLEY, | ) | |
| | ) | |
| Defendants | ) | |

---

### COMPLAINT AND DEMAND FOR JURY TRIAL

---

This is an action for wrongful retaliatory discharge under Tennessee common law, wrongful retaliatory discharge under the Tennessee Public Protection Act or Tennessee Whistleblower Statute, wrongful termination in violation of the Age Discrimination in Employment Act, intentional infliction of emotional distress, negligent infliction of emotional distress, civil conspiracy, intentional interference with an at-will employment, and conversion brought by Plaintiff, Cassandra Rakoczy, against the above-named Defendants.

#### PARTIES

1. Plaintiff, CASSANDRA RAKOCZY, is an individual, *sui juris*, and a resident of Thompson Station, Williamson County, Tennessee.

1

2. Defendant, SOUTHERN LAND COMPANY, LLC, (hereinafter "Defendant Southern") is an active, for-profit company organized under the laws of Tennessee (SOS # 000296391) with its principal office at 1550 W. McEwen Drive, Suite 200, Franklin, TN 37067.

3. Defendant, NOLAN CHIP BRADLEY (hereinafter "Defendant Bradley"), is an individual and resident of Franklin, Williamson County, Tennessee.

### JURISDICTION AND VENUE

4. The Circuit Court has subject matter jurisdiction over this action pursuant to Tenn. Code Ann. § 16-10-101 *et seq.*

5. Venue is proper in this Court pursuant to Tenn. Code Ann. § 20-4-101(a) as Plaintiff's causes of action arose in Williamson County, Tennessee. Defendant Southern also maintains its principal place of business in Williamson County, Tennessee.

### FACTUAL ALLEGATIONS

6. This is an action for monetary damages against Defendants.

7. Plaintiff was an employee of Defendant Southern and worked predominantly as a bartender at the Westhaven Golf Club (hereinafter "Westhaven") located at 4000 Golf Club Lane, Franklin, TN 37064. Westhaven is owned by Defendant Southern.

8. Plaintiff began working for Defendant Southern on August 21, 2012.

9. Defendant Bradley was Plaintiff's supervisor upon employment and is the current Food and Beverage Director of Westhaven.

10. Over time, Plaintiff began to feel uncomfortable with the behavior of the Westhaven management, particularly Defendant Bradley.

2

11. Westhaven management directed the bartenders, including Plaintiff, to be conscious of and to not speak of alcohol being given to and consumed by minors at Westhaven, and directed Plaintiff to serve clearly intoxicated patrons and to serve alcohol to patrons in to-go cups to take with them on the road.

12. Plaintiff further discovered evidence that Westhaven management was unlawfully taking tips that were intended for Plaintiff and the other bartenders and servers.

13. Plaintiff also observed Westhaven management turn away well-qualified applicants from employment because of their age or attractiveness. Defendant Bradley specifically mentioned to Plaintiff that the only reason she was able to keep her job with Westhaven was because Plaintiff did not look like she was forty (40) years of age.

14. Plaintiff was constantly threatened by Westhaven management with losing her job if she did not abide by Westhaven management's instructions. Plaintiff felt so uncomfortable with the practices of Westhaven management that on March 17, 2014 Plaintiff had a meeting with Defendant Southern's human resources director, Becca Reilly (hereinafter "the Meeting"). In this Meeting, Plaintiff disclosed to Ms. Reilly the unlawful conduct being performed by Westhaven management. Ms. Reilly assured Plaintiff that she would suffer no adverse consequences for reporting Westhaven management's unlawful behavior.

15. Prior to Plaintiff's Meeting with Ms. Reilly, Plaintiff was treated well by Westhaven management, and was even named employee of the month for February 2013. But, in the months following the Meeting, Plaintiff's treatment by Westhaven management steadily worsened. During the period after the Meeting, Plaintiff was subject to inappropriate comments and verbal abuse by her supervisors (including being constantly yelled at by Defendant Bradley), was frequently reassigned from

3

her usual and higher-paying bartending post to the lower-paying serving posts, was no longer assigned to the lucrative task of working events and parties, and was prevented from receiving the employee 401k benefit. Additionally, Westhaven members would curse at the Plaintiff when she would serve them drinks from the bar.

16. In April 2014, Plaintiff injured her back. Instead of using the injury as an opportunity to show Plaintiff compassion, Westhaven management used Plaintiff's back injury as an opportunity to further punish Plaintiff for reporting Westhaven management's unlawful conduct. Plaintiff requested permission to continue working after her injury. But instead, Westhaven management forced her to take a leave of absence from work under the Family Medical Leave Act. Plaintiff's approved leave began on April 8, 2014 and lasted until May 2, 2014. Immediately after Plaintiff returned to work from her leave, Plaintiff was further punished by Westhaven management by being assigned double shifts.

17. Plaintiff additionally began experiencing disparate treatment because of her age. Plaintiff turned forty (40) in November 2013. Upon information and belief, once Plaintiff turned forty, Defendant Bradley told Westhaven staff that he wanted someone "younger and blonder" working behind the bar. Shortly after, Plaintiff began losing her bartending shifts to a tall, blonde, former model named Emily.

18. After Plaintiff's meeting with Ms. Reilly, Westhaven management conducted a survey of Westhaven club members regarding the adequacy of Plaintiff's work as a bartender. Upon information and belief, instead of following proper methods for designing reliable scientific surveys, Westhaven management cherry-picked the survey participants in order to create a pretense that could be used as a justification to terminate Plaintiff. Immediately after the survey was taken, Plaintiff was terminated on June 10, 2014. Ms. Reilly, Defendant Bradley, and Richard Pavlasek (Director of Golf Operations at

4

Westhaven) were all present in Mr. Pavlasek's office upon Plaintiff's termination. Mr. Pavlasek exited the office at the same time as Plaintiff entered the office where Plaintiff was immediately terminated.

19. On the day of Plaintiff's termination, at 10:09 AM, Westhaven placed an advertisement on an internet site known as "Craigslist" seeking to hire a bartender for the club. (*See Exhibit A*). Plaintiff, however, was not terminated until 4:35 PM that day.

20. Upon Plaintiff's termination, Defendant Southern took the unusual step of offering Plaintiff, who served as a bartender, a severance offer of two weeks pay if Plaintiff agreed to sign a "Confidential Separation Agreement and General Release" (hereinafter "the Agreement") (*See Exhibit B*). Through the Agreement, Plaintiff is asked to waive an extensive list of legal claims against Defendant Southern, including claims for tortious or wrongful discharge, retaliation or retaliatory discharge, and claims under the Age Discrimination in Employment Act. The Agreement additionally contains broad prohibitions against disclosing confidential information about Westhaven and the activities that occurred at Westhaven and a non-disparagement clause designed to further limit Plaintiff's ability to discuss Westhaven with anyone.

21. Immediately upon Plaintiff's termination, Plaintiff was replaced by a twenty-four (24) year old bartender named Allysa Forrest.

22. As a result of her termination, Plaintiff experienced many severe mental injuries. Plaintiff experienced severe public embarrassment on the day she was terminated, as she was the only one of her colleagues who didn't know that she would be terminated that day. Plaintiff was subject to whispering by her co-workers about her, when Plaintiff had no idea about her termination. Plaintiff experienced extreme embarrassment in the manner in which her termination was conducted, as Plaintiff was the lead bartender and her termination was extremely public and embarrassing for her as a leader.

5

Plaintiff also experienced an extreme amount of stress, as Plaintiff is a single mother of two children. Plaintiff experienced extreme stress and anxiety from the fear that she would not be able to financially support her children as a result of her termination. Plaintiff also had many sleepless nights because of this extreme stress and fear.

23. Plaintiff also suffered a depression as a result of her termination. Plaintiff wished to seek treatment for her depression, but, because she lost her insurance benefits on the day of her termination, Plaintiff could not afford to seek treatment for her depression.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION - RETALIATORY DISCHARGE IN VIOLATION OF TENNESSEE PUBLIC PROTECTION ACT OR WHISTLEBLOWER STATUTE

**(By Plaintiff against Defendant Southern)**

24. Plaintiff incorporates and reasserts paragraphs 1-23 above.

25. The Tennessee Public Protection Act, also known as the Tennessee Whistleblower Statute, provides that "no employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b). In order to establish a *prima facie* case under the Tennessee Public Protection Act, a plaintiff must show that they were an employee of the defendant employer; plaintiff refused to participate in, or remain silent about, illegal activities performed during the employment; plaintiff was terminated; and there exists an exclusive causal relationship between plaintiff's refusal to participate in or remain silent about illegal activities and plaintiff's termination. Counce v. Ascension Health, 2010 Tenn. App. Lexis 178 (Tenn. Ct. App. March 8, 2010).

26. Plaintiff was an employee of Defendant Southern, and began employment on August 21, 2012, in which Plaintiff worked as a bartender for Westhaven.

6

27. Plaintiff refused to participate, or remain silent about, the illegal activities of Defendant Southern including being instructed to be conscious of and not speak of alcohol being given to and consumed by minors at Westhaven, serving clearly intoxicated patrons, and serving alcohol to patrons in to-go cups to take on the road. These activities are in violation of Tennessee liquor laws, specifically Tenn. Code Ann. § 57-4-203(b) and (c). Plaintiff refused to remain silent about these illegal activities, and reported them to Defendant Southern's human resource director on March 17, 2014.

28. Plaintiff additionally refused to remain silent about Westhaven's action of taking the bartenders and servers tips for service which is illegal conduct under the Fair Labor Standards Act (hereinafter "FLSA"). Subsection 203(m) of the FLSA only allows employers to take tip credits toward the wage paid to "tipped employees". 29 U.S.C. § 203(m)(1994). Subsection 203(m) of the FLSA provides that "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(1994). Since Westhaven's management were not employees "who customarily and regularly receive tips", Plaintiff and other bartenders and servers were entitled to their tips, and the taking of those tips by Westhaven management was unlawful. Plaintiff refused to remain silent about these illegal activities, and reported them to Defendant Southern's human resource director on March 17, 2014.

29. Plaintiff was terminated on June 10, 2014.

30. An exclusive causal relationship exists between Plaintiff's refusal to participate in or remain silent about Defendant Southern's illegal activities and Plaintiff's termination in that, prior to Plaintiff's Meeting with Ms. Reilly, she was a valued employee evidenced by Plaintiff receiving employee of the month in February 2013. After Plaintiff's Meeting with Ms. Reilly, however, the Westhaven

7

management mistreated Plaintiff by refusing to give Plaintiff her usual higher-paying bartending shifts, preventing Plaintiff from receiving the employee 401k benefit, and no longer assigning the more lucrative task of working events and parties. And as a result of the Meeting, Plaintiff was ultimately terminated.

31. Plaintiff requests damages against the above named Defendant in an amount to be determined at trial, including, but not limited to, reasonable attorney fees and costs as permitted by Tenn. Code Ann. § 50-1-304(d)(2). Plaintiff additionally requests punitive damages as permitted in Tennessee for retaliatory discharge claims based on Defendant Southern's reprehensible conduct.

## SECOND CAUSE OF ACTION - RETALIATORY DISCHARGE IN VIOLATION OF TENNESSEE COMMON LAW

### (By Plaintiff against Defendant Southern)

32. Plaintiff incorporates and reasserts paragraphs 1-23 above.

33. Tennessee has recognized a common law action for retaliatory discharge. Crews v. Buckman Labs. Int'l, 78 S.W.3d 852 (Tenn. 2002). In order to establish a *prima facie* case for retaliatory discharge under Tennessee common law, the plaintiff must show "that an employment-at-will relationship existed, the plaintiff was discharged, and that the reason for the plaintiff's discharge was that the plaintiff attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision, and that a *substantial factor* in the employer's decision to discharge plaintiff was the plaintiff's exercise of protected rights or plaintiff's compliance with clear public policy." Counce v. Ascension Health, 2010 Tenn. App. Lexis 178 (Tenn. Ct. App. March 8, 2010).

34. Plaintiff did have an employment-at-will relationship with Defendant Southern that began on August 21, 2012, in which Plaintiff worked as a bartender for Westhaven.

35. Plaintiff was terminated on June 10, 2014.

8

36. When Plaintiff attempted to exercise her right to report Westhaven activities that clearly violated public policy, Plaintiff was subject to inappropriate comments and verbal abuse by her supervisors. Westhaven management also refused to give Plaintiff her usual higher-paying bartending shifts, prevented Plaintiff from receiving the employee 401k benefit, and no longer assigned her to the more lucrative task of working events and parties. Plaintiff was ultimately discharged due to her attempt to exercise her right to report Westhaven's illegal activities that are a clear violation of public policy.

37. Plaintiff's exercise of her right to report Westhaven's violation of public policy was a substantial factor in Defendant Southern's decision to terminate Plaintiff, evidenced by the short time that lapsed between Plaintiff's Meeting with Ms. Reilly and Plaintiff's termination, as well as the fact that Plaintiff was treated well and was respected by Westhaven management before Plaintiff's Meeting with Ms. Reilly, and was even named employee of the month in February 2013.

38. Plaintiff requests damages against the above-named Defendant in an amount to be determined at trial for Defendant Southern's retaliatory discharge based on Plaintiff's attempt to exercise her right to report Westhaven management's illegal conduct. Plaintiff additionally requests punitive damages as permitted in Tennessee for retaliatory discharge claims based on Defendant Southern's reprehensible conduct.

### THIRD CAUSE OF ACTION - WRONGFUL TERMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

#### (By Plaintiff against Defendant Southern)

39. Plaintiff incorporates and reasserts paragraphs 1-23 above.

40. Tennessee recognizes a claim for wrongful termination in violation of the Age Discrimination in Employment Act. Tenn. Code Ann. § 4-21-401 states that it is a discriminatory practice for an employer to "fail or refuse to hire or **discharge** any person or otherwise to discriminate against an

9

individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, **age**, or national origin." Tenn. Code Ann. § 4-21-401(a)(1) (*emphasis added*).

41. In order to establish a *prima facie* case of age discrimination, a plaintiff must show that the plaintiff was a member of the protected class (being over the age of forty (40)), plaintiff was subjected to adverse employment action, plaintiff was qualified for the position, and plaintiff was replaced by a younger person. McKinna v. Lasco, Inc., 1997 Tenn. App. LEXIS 200 (Tenn. Ct. App. Mar. 20, 1997) (*citing* McDonnell Douglas v. Green, 411 U.S. 792 (1973)). Cases that contain an action for age discrimination in employment are limited to plaintiffs who fall into the forty (40) to seventy (70) year age group. Tenn. Code Ann. § 4-21-126(a).

42. The Federal Age Discrimination in Employment Act, codified as 29 U.S.C. § 621, requires identical elements to prove a *prima facie* case for age discrimination, in that a plaintiff must show that they were a member of the protected class of those age forty (40) and older, the plaintiff was subjected to an adverse employment action, the plaintiff was qualified for the position, and the plaintiff was replaced by a substantially younger person. Stipkala v. American Red Cross, 2000 U.S. App. LEXIS 11833 (6th Cir. 2000).

43. As of November 2013, and during the course of her employment, Plaintiff was the age of forty (40) years old, and is thus a member of the class that the Age Discrimination in Employment Act is intended to protect.

44. Plaintiff was subject to adverse employment action in that, after Plaintiff had turned forty (40), upon information and belief, Defendant Bradley had informed Plaintiff that the Westhaven management wanted someone "younger and blonder" to work behind the bar at the Westhaven Golf Club.

10

Westhaven management subsequently hired a young, tall, blonde, and former model named Emily. After the hiring of Emily, Plaintiff lost a majority of her bartending shifts, which Plaintiff had previously worked before the hiring of a younger bartender, causing Plaintiff to be assigned to the lower-paying server duty.

45. Defendant Southern's advertisement for a replacement bartender placed before Plaintiff's termination additionally subjected Plaintiff to adverse employment action by Defendant Southern. (*see Exhibit A*). This advertisement indicates that personal appearance is important to Westhaven, implying Westhaven was seeking someone young and attractive, as evidenced by the fact that many well-qualified bartenders were often turned away from employment because of their age or looks.

46. Plaintiff was obviously well-qualified for the bartending shifts, evidenced by the fact that Plaintiff had been working the majority of the bartending shifts before Plaintiff turned the age of forty (40), as well as being given the employee of the month award for February 2013.

47. Upon termination, Plaintiff's job as lead server/bartender/trainer was immediately taken over by a twenty-four (24) year old girl named Allysa Forrest.

48. Plaintiff requests damages against the above named Defendant in an amount to be determined at trial for Defendant Southern's wrongful termination in violation of the Age Discrimination in Employment Act. Specifically, Plaintiff requests damages for back pay lost as a proximate result of the violation, as well as the back pay from the date of her re-employment until the present. Plaintiff additionally requests equitable relief in the form of front pay.

49. Plaintiff further requests liquidated damages for Defendant Southern's willful violation of the Age Discrimination in Employment Act, which are recoverable in an amount equal to the award of back pay.

11

## FOURTH CAUSE OF ACTION - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (By Plaintiff against Defendant Southern)

50. Plaintiff incorporates and reasserts paragraphs 1-23 above.

51. Tennessee recognizes the tort of intentional infliction of emotional distress. Bain v. Wells, 936 S.W.2d 618 (Tenn. 1997). For a plaintiff to establish a claim for intentional infliction of emotional distress, the plaintiff must show that the conduct complained of must be intentional or reckless, the conduct must be so outrageous that it is not tolerated by civilized society, and the conduct complained of must result in serious mental injury. Bain, at 622.

52. Defendant Southern's conduct prior to the termination of Plaintiff was clearly intentional. The inappropriate comments and verbal abuse by the Westhaven management toward Plaintiff after Plaintiff's meeting with Ms. Reilly was intended to punish Plaintiff for her disclosure of the Westhaven management's illegal conduct. Further, Westhaven management's acts of reassigning Plaintiff to lower-paying serving posts and prevention from receiving the employee 401k benefit was also intended to punish Plaintiff for her disclosure.

53. Defendant Southern's termination of Plaintiff was also intentional.

54. Defendant Southern's conduct prior to the termination of Plaintiff, including the inappropriate comments and verbal abuse, was extremely outrageous and goes beyond all bounds of decency in that no reasonable employer would subject their employees to inappropriate comments and verbal abuse after the employee disclosed the employer's illegal acts to the supervising authority. Such conduct is utterly intolerable in a civilized society.

55. Defendant Southern's termination of Plaintiff was extremely outrageous in that the cause for Plaintiff's termination was the fact that Plaintiff disclosed Westhaven management's illegal conduct to

12

Ms. Reilly. Terminating an employee for such a reason absolutely amounts to extreme and outrageous conduct that is utterly intolerable in a civilized society.

56. As a result of Westhaven management's mistreatment of Plaintiff after Plaintiff's meeting with Ms. Reilly, Plaintiff experienced severe public embarrassment by the inappropriate comments and verbal abuse, as such actions took place in front of other co-workers, amounting to serious mental injury.

57. Plaintiff also experienced severe public embarrassment on the day she was terminated, as Plaintiff was the only one of her colleagues who didn't know she would be terminated that day. Plaintiff was subject to whispering by her colleagues about her, when Plaintiff had no idea about her termination. Plaintiff experienced extreme embarrassment in the manner in which her termination was conducted, as Plaintiff was the lead bartender and her termination was extremely public and embarrassing to her as a leader. Such severe public embarrassment amounted to serious mental injury.

58. Plaintiff experienced additional severe mental injuries as a result of her termination. Plaintiff experienced an extreme amount of stress, as Plaintiff is a single mother of two children. Plaintiff experienced extreme stress and anxiety from the fear that she would not be able to financially support her children as a result of her termination. Plaintiff also had many sleepless nights because of this extreme stress and fear. This extreme amount of stress and fear resulted in Plaintiff experiencing serious mental injury.

59. As a result of her termination, Plaintiff also suffered a depression. Plaintiff experienced an extreme amount of sadness during this period and loss of enjoyment for life. Plaintiff wished to seek treatment for her depression, but, because she lost her insurance benefits on the day of her termination,

13

Plaintiff could not afford to seek treatment for her depression. This depression that the Plaintiff experienced amounted to serious mental injury.

60. Plaintiff requests damages against the above named Defendant in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (By Plaintiff against Defendant Southern)

61. Plaintiff incorporates and reasserts paragraphs 1-23 above.

62. Tennessee recognizes the tort of negligent infliction of emotional distress. Camper v. Minor, 915 S.W.2d 437 (Tenn. 1996). As recently as February 2014, in Coleman v. Humane Soc'y of Memphis, our Court of Appeals upheld a plaintiff's claim for negligent infliction of emotional distress against his or her employer based on the theory of respondeat superior. 2014 Tenn. App. LEXIS 77 (Tenn. Ct. App. Feb. 14, 2014). Tennessee courts have adopted the general negligence standard when analyzing claims for negligent infliction of emotional distress. Camper, at 446. In an action for negligent infliction of emotional distress, the plaintiff must prove the five elements of general negligence (duty, breach of duty, injury or loss, causation in fact, and proximate or legal cause) as well as serious emotional injury in that "a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case". Camper, at 446. Additionally, Tennessee courts require that the claimed injury or impairment must be supported by expert medical or scientific proof. Camper, at 446. However, if the claimed emotional injury is related to the retaliatory discharge claims of a plaintiff, the retaliatory discharge claims can serve the purpose of demonstrating the reliability of the plaintiff's claim for emotional distress. Coleman v. Humane Soc'y of Memphis, 2014 Tenn. App. LEXIS 77 (Tenn. Ct. App. Feb. 14, 2014). Further, an employee may assert a claim for

14

negligent infliction of emotional distress against her employer if the negligent infliction of emotional distress claim is "parasitic" to the claim for retaliatory discharge, such that the negligent infliction of emotional distress claim is not a stand alone claim. Coleman v. Humane Soc'y of Memphis, 2014 Tenn. App. LEXIS 77 (Tenn. Ct. App. Feb. 14, 2014).

63. Duty is a legal obligation owed by a defendant to a plaintiff which requires the defendant to conform to a reasonable person standard of care in order to protect against unreasonable risks of harm. Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 89 (Tenn. 2000). A risk is "unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweighs the burden upon defendant to engage in alternative conduct that would have prevented the harm." Id. (citing McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995)).

64. Defendant Southern owed a duty to the Plaintiff to provide a work environment free from inappropriate comments, verbal abuse, and psychological abuse.

65. Defendant Southern breached its duty when it allowed Plaintiff to be subject to inappropriate comments and verbal abuse by Westhaven supervisors, and when Westhaven humiliated Plaintiff by firing her in a public fashion.

66. As a direct and proximate cause of Defendant Southern's breach of duty, Plaintiff has suffered serious mental and emotional injury in the form of extreme public embarrassment.

67. Because Plaintiff's emotional injuries are related to Plaintiff's retaliatory discharge claims against Defendant Southern, the retaliatory discharge claims serve the purpose of demonstrating the reliability of Plaintiff's claim for emotional distress.

68. Plaintiff requests damages against the above named Defendant in an amount to be determined at trial.

15

## SIXTH CAUSE OF ACTION - CIVIL CONSPIRACY

### (By Plaintiff against Defendant Southern)

69. Plaintiff incorporates and reasserts paragraphs 1-23 above.

70. In Tennessee, a civil conspiracy is "a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." Kiger v. Jennings Funeral Homes, Inc., 2011 U.S. Dist. LEXIS 704 (D. Tenn. 2011) *citing* Brown v. Birman Managed Care, Inc., 42 S.W.3d 62, 67 (Tenn. 2001). In a civil conspiracy, there is no liability unless there is underlying wrongful conduct. Levy v. Franks, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004). "It is a general rule that a conspiracy cannot be made the subject of a civil action, unless something is done which, without the conspiracy, would give a right of action." Levy, at 82 *citing* Tenn. Pub. Co. v. Fitzhugh, 52 S.W.2d 157, 158 (Tenn. 1932).

71. On the day that Plaintiff was terminated, Plaintiff walked into Mr. Pavlasek's office (Director of Golf Operations at Westhaven) with Defendant Bradley, Mr. Pavlasek, and Ms. Reilly all waiting in the office to terminate Plaintiff, with Mr. Pavlasek leaving the office as Plaintiff entered the office. These management directors conspired together to procure the termination of Plaintiff in violation of the Age Discrimination in Employment Act.

72. Plaintiff further alleges that Defendant Southern and Westhaven management conspired to violate Plaintiff's rights under the Tennessee Public Protection Act or Tennessee Whistleblower Statute. Ms. Reilly, Mr. Pavlasek, and Defendant Bradley all were present in Mr. Pavlasek's office immediately prior to Plaintiff's termination, with Mr. Pavlasek leaving the office as Plaintiff entered the office who was thereafter immediately terminated, evidencing a joint decision between Westhaven management to

16

terminate Plaintiff in violation of Plaintiff's rights under the Tennessee Public Protection Act or Tennessee Whistleblower Statute.

73. As a result of Defendant Southern and Westhaven management having committed the legally actionable tort of civil conspiracy, Plaintiff has suffered the loss of her bartending employment by Defendant Southern.

74. Defendant Southern is legally liable to Plaintiff, and Plaintiff is entitled to receive compensation from Defendant Southern for any harm and damage suffered by Plaintiff due to the tort of civil conspiracy to violate Plaintiff's rights under the Tennessee Public Protection Act, Age Discrimination in Employment Act, and conspiring against Plaintiff to accomplish unlawful purposes.

## SEVENTH CAUSE OF ACTION - INTENTIONAL INTERFERENCE WITH AN AT-WILL EMPLOYMENT

### (By Plaintiff against Chip Bradley in his individual capacity)

75. Plaintiff incorporates and reasserts paragraphs 1-23 above.

76. In Tennessee, an at-will employee has a property interest in continued employment without unjustified interference by those who stand outside the employment relationship. Lyne v. Price, 2002 Tenn. App. LEXIS 461 (Tenn. Ct. App. June 27, 2002). "Where a third party intentionally and unjustifiably interferes with that employment interest by procuring the plaintiff's termination, a cause of action will lie against the third party." Lyne, at *8. A director, officer, or employee may be held liable if he seeks to advance his personal economic interest and advantages separate from the corporation's interests. Lyne, at *12. Even if a director, officer, or employee has the authority to procure a plaintiff's termination, where his actions are motivated substantially by malice or his own personal interest rather than in furtherance of his employer's interest, he stands as a third party to the employment relationship and, thus, may be held individually liable for the plaintiff's unjustified termination. Lyne, at *12.

17

77. Defendant Bradley was acting to advance his own economic interest and advantage by procuring Plaintiff's termination. Upon information and belief, Defendant Bradley benefitted personally from Plaintiff's discharge because Defendant Bradley would no longer be in jeopardy of Plaintiff disclosing his illegal practices of serving alcohol in a manner that violates Tennessee state liquor laws to a higher authority and causing Defendant Bradley to lose his employment. Therefore, because Defendant Bradley's actions were motivated substantially by his own personal interest rather than in furtherance of his employer's interest, he stands as a third party to the employment relationship, and may be held liable for Plaintiff's unjustified termination.

78. Upon information and belief, Defendant Bradley has also benefitted personally from Plaintiff's discharge because Defendant Bradley is no longer in jeopardy of Plaintiff disclosing his illegal practices of stealing tip shares in violation of the FLSA for his own benefit to a higher authority and causing Defendant Bradley to lose his employment. Therefore, because Defendant Bradley's actions were motivated substantially by his own personal interest rather than in furtherance of his employer's interest, he stands as a third party to the employment relationship, and may be held liable for Plaintiff's unjustified termination.

79. Plaintiff requests damages against the above named Defendant in an amount to be determined by a jury at trial.

### EIGHTH CAUSE OF ACTION - CONVERSION

#### (By Plaintiff against Defendant Bradley in his individual capacity)

80. Plaintiff incorporates and reasserts paragraphs 1-23 above.

81. Tennessee recognizes the intentional tort of conversion. H & M Enters. v. Murray, 2002 Tenn. App. LEXIS 261 (Tenn. Ct. App. 2002). In order to establish a *prima facie* case for conversion, a

18

plaintiff must prove the appropriation of another's property to one's own use and benefit, by the intentional exercise of dominion or control over it, and in defiance of the true owner's rights. H & M Enters. at *7.

82. Subsection 203(m) of the FLSA only allows employers to take tip credits toward the wage paid to "tipped employees". Subsection 203(m) of the FLSA provides that "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(1994).

83. Defendant Bradley is not an employee who customarily and regularly receives tips.

84. Upon information and belief, by Defendant Bradley's actions of exercising control and taking Plaintiff's tip money and using the money for his own benefit, Defendant Bradley has committed the intentional tort of conversion.

85. Plaintiff requests damages against the above-named Defendant in an amount to be determined by a jury at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, CASSANDRA RAKOCZY, respectfully requests a jury to try this cause and further requests Judgment against Defendants, SOUTHERN LAND COMPANY, LLC and NOLAN CHIP BRADLEY, for:

A. Damages and costs associated with Plaintiff's wrongful termination in an amount in excess of $250,000.

B. That Plaintiff be awarded reasonable expenses incurred in this litigation, including reasonable attorney and expert fees.

19

C. That Plaintiff be entitled to amend her Complaint to include specific monetary damages based upon continued investigation and discovery.

D. That Plaintiff be allowed to amend her Complaint to include punitive damages in an amount to be determined by the jury upon an evidentiary showing of entitlement to the same.

E. That Plaintiff receives any other further and general relief as deemed appropriate by the Court.

This is the _____ day of August, 2014.

Respectfully submitted,

THEODORE C. WILLS, NO. 32590
COLE LAW GROUP
750 Old Hickory Boulevard
Building Two, Suite 202
Brentwood, Tennessee 37027
T: (615) 490-6020
F: (615) 942-5914
twills@colelawgroup.us
Attorney for Plaintiff

20

**EXHIBIT A**



●●●●○ Verizon  LTE   **1:00 PM**

🔒 **nashville.craigslist.org**   ↻

food/beverage/hospitality jobs   ≡

( reply )  Posted: 2014-06-10 10:09am   prohibited

⭐ **Bartender-Server (Franklin, TN)**

compensation: **$5 per hour plus tips**

Westhaven Golf Club, an 18 hole private golf club located in Franklin, Tennessee, by land developer Southern Land Company, is seeking service oriented team members.

The Westhaven Golf Clubhouse will offer a long list of amenities including a full service golf shop, an elegant clubhouse with the surrounding grounds manicured in an English garden style, private men's and ladies' locker rooms, member bag storage, member's grill with course views and a full service banquet facility for all events

Westhaven Golf Club is looking for a


Westhaven Golf Club is looking for a
Bartender-Server. Must be a seasoned
bartender with experience using fresh products,
wine knowledge, knowledge of new trends,
willing to go the extra mile, friendly, has a
sense of urgency, and willingness to adapt to
multiple positions. This position also allows
creativity when coming up with new drinks!!!

Applicant must have experience serving in a
casual dining establishment. Important Notes:
Candidates must be able to work nights,
weekends, and holidays. In this position
personal appearance is important to Westhaven
Golf Club.

Southern Land Company is a Drug Free
Workplace. EOE.

Please email with resume or call 615.224.2985

# EXHIBIT B

## CONFIDENTIAL SEPARATION AGREEMENT AND GENERAL RELEASE
### Presented This 10th Day of June, 2014.

This Confidential Separation Agreement and General Release ("Agreement") is entered into by and between Cassie Rakoczy ("Employee") and Southern Land Company, LLC. ("Southern Land"). Employee and Southern Land desire to enter into an agreement that sets forth the terms of the agreed severance benefits, the separation of employment, and the general release of claims.

In consideration of the mutual promises and agreements that are a part of this Agreement, the adequacy and sufficiency of which are hereby acknowledged, Employee and Southern Land agree as follows:

1.  Employee's employment with Southern Land or any of the Released Parties (as defined below in Paragraph 3) will be terminated, and Employee will be relieved of all duties, effective June 10, 2014 (the "Separation Date"). Thereafter, except as expressly provided herein, no future compensation or benefits will accrue in Employee's favor.

2.  Southern Land will:

    (a)  pay Employee for Two (2) weeks (40 hours per week at $18 per hour) after the Separation Date, less customary withholding and deductions, as severance pay. These amounts will be paid to Employee on Southern Land's regularly scheduled paydays. Employee agrees that these severance payments are a benefit to which Employee is not otherwise entitled;

    (b)  Employee's present coverage under the employee health insurance and dental insurance plans will cease as of June 30, 2014; however, Employee will be sent under separate notice information regarding eligibility to continued coverage pursuant to the Consolidated Omnibus Budget Reconciliation Act ("COBRA") of 1985;

    (c)  Employee may also convert any supplemental insurance coverage under the Company's group plan into individual coverage to the extent the right to convert such coverage is provided under the terms of the plans in which Employee participated as of the Separation Date.

    Pursuant to the terms of this Agreement, Employee is entitled to no additional compensation or benefits of any kind from Southern Land.

3.  The term "Released Parties" shall be interpreted broadly and includes Southern Land and its parent company, subsidiary companies, and related entities, and each of their past, present, and future owners, fiduciaries, shareholders, directors,

officers, partners, agents, employees, and attorneys, and the predecessors, successors, and assigns of each of them.

4.     Employee, and anyone claiming through Employee, waives any and all claims against the Released Parties and agrees to release the Released Parties from any and all charges, complaints, claims, liabilities, obligations, actions, causes of action, suits, demands, costs, losses, damages and expenses which Employee now has or ever had, against any of the Released Parties.  This release includes claims arising from conduct or omissions through the effective date of this Agreement, including but not limited to:

(a)     Claims which are based upon or arise out of any aspect of Employee's employment with or separation of employment from the Company.    This release specifically includes, but is not limited to, the following types of claims: for breach of any employment contract or agreement, express or implied; for tortious or wrongful discharge or other wrongful conduct; for breach of any covenant or duty of good faith and fair dealing; for intentional or negligent infliction of emotional distress; for defamation, libel, or slander; for negligence; for battery or assault; for invasion of privacy; for unfair labor practices; for fraud or misrepresentation; for failure to pay wages, bonuses, commissions, benefits, unreimbursed business expenses, or other compensation of any sort; for retaliation or retaliatory discharge; and for employment discrimination or harassment on the basis of race, color, national origin, religion, sex, sexual orientation, age, disability, uniformed service, or other unlawful basis; and

(b)     Claims for or related in any way to Employee's employment, hiring, conditions of employment, assignments, or separation from employment. This release specifically includes claims or causes of action for alleged violations of any federal, state, or local statute, rule, regulation, ordinance, or common law applicable to the employment relationship between the parties, including, but not limited to, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Americans With Disabilities Act, the Worker Adjustment and Retraining Notification (WARN) Act, any state plant closing or layoff statutes,  the Age Discrimination in Employment Act ("ADEA", as amended by the Older Worker Benefit Protection Act), the Family and Medical Leave Act of 1993 ("FMLA"), and the Tennessee Human Rights Act ("THRA").

Employee acknowledges and agrees that Employee has been paid all wages, bonuses, commissions, or other compensation due from the Released Parties and has been paid for all hours worked for Southern Land.

5.     The release in Paragraph 4 of this Agreement includes a waiver of all claims of age discrimination and of any alleged violations of the ADEA, Employee specifically acknowledges the following:

2

(a)     that Employee has been advised to consult with an attorney of Employee's choosing concerning the legal significance of this Agreement;

(b)     that this Agreement is written in a manner that Employee understands;

(c)     that the consideration set forth in Paragraph 2 of this Agreement is adequate and sufficient for Employee's entering into this Agreement and consists of benefits to which Employee is not otherwise entitled;

(d)     that Employee has been offered twenty-one (21) days to consider this Agreement before executing this Agreement and that any changes to this Agreement subsequently agreed upon by the parties, whether material or immaterial, do not restart this period for consideration; and

(e)     that Employee has been advised that during the seven (7) day period following Employee's execution of this Agreement, Employee may revoke the acceptance of this Agreement by delivering written notice to Becca Reilly, Human Resources Director, Southern Land Company, LLC, 1550 W. McEwen Drive, Suite 200, Franklin, Tennessee 37067 and that any obligation to pay severance amounts to provide other benefits to Employee pursuant to this Agreement shall not become effective or enforceable until after the revocation period has expired.

6.     Employee agrees, represents, and warrants that Employee is the sole owner of the claims that are released in this Agreement and that Employee has the full right and power to grant, execute, and deliver the releases and promises in this Agreement. Employee agrees not to pursue a lawsuit or judicial or legal proceeding to recover monetary remedies or damages for injuries that Employee contends the Released Parties may have caused, and Employee agrees not to file or institute such a proceeding or legal action. However, nothing in this agreement is intended to limit Employee's opportunity to file an action to challenge the validity of this agreement (and the release contained within it) or Employee's right to file a charge with the Equal Employment Opportunity Commission, or any other government agency, although Employee waives the right to recover any damages or other relief in any claim or suit brought by or through the Equal Employment Opportunity Commission or any other federal, state or local agency on Employee's behalf, except where such waivers are prohibited by law. Employee represents and warrants that Employee has not initiated or filed any legal, equitable, administrative, or any other proceeding against any of the Released Parties at the time of the execution of this Agreement and that no such proceeding has been initiated or filed on Employee's behalf. The consideration offered herein is accepted by Employee as being in full accord, satisfaction, compromise and settlement of any and all claims or potential claims, and Employee expressly agrees that Employee is not entitled to and shall not receive any further recovery of any kind from Southern Land or any of the Released Parties, and that in the event of any further proceedings whatsoever based upon any matter released herein, Southern Land and each of the Released Parties shall

3

have no further monetary or other obligation of any kind to Employee, including any obligation for any costs, expenses and attorneys' fees incurred by or on behalf of Employee. Employee acknowledges that Employee has not suffered any on-the-job injury or illness for which Employee has not already filed a claim or a report of injury.

7.     Employee agrees that the terms of this Agreement are intended to be confidential and that Employee will not disclose the existence or terms of this Agreement to any third parties with the exception of Employee's accountants, attorneys, and spouse, each of whom as a condition of this Agreement shall be bound by this confidentiality provision, or as may be required to comply with legal process. Employee understands and agrees that this requirement of confidentiality in addition to other terms of this Agreement is a material inducement to Southern Land to enter into this Agreement.

8.     Employee recognizes and acknowledges that Employee had access to and used Confidential Information of the Released Parties and their customers during the course of Employee's employment. Such Confidential Information included: building plans; development plans and contracts; real estate and construction plans; confidential financial and profit/loss records; financial and other plans; marketing methods and systems; advertising strategies and methods; strategic plans for future growth and development; customer lists; personnel lists and information; information regarding customers and potential customers, staff members, or suppliers, and reports prepared by consultants. Confidential Information does not include any information that is or has become generally available to the public. Employee acknowledges that the Confidential Information and other trade secrets of Southern Land are valuable, special, and unique assets of Southern Land and the Released Parties.

Employee agrees not to disclose any Confidential Information to any person, firm, corporation, or other entity following the Separation Date. Moreover, Employee agrees not to use or cause to be used any Confidential Information for Employee's own benefit or as part of any business undertaking. .

Prior to Employee's execution of this Agreement, Employee will return to Southern Land all Confidential Information and all documents and other information that are the property of Southern Land, its parents, affiliates and divisions, that are in his possession or control and that are in any way related to Southern Land or which reflect or contain information, data, or ideas generated or collected by or on behalf of Southern Land, including, but not limited to, all documents, memoranda, notes, records, reports, investigative or otherwise, manuals, correspondence, customer lists, books, databases, supplier/contractor/ consultant lists and information, presentations, flow charts, outlines, financial information, projections, customer marketing documents and plans, whether stored on paper, computer, tape, or any other means of data storage. Employee will also immediately return to Southern Land any keys, credit cards, company vehicles (unless purchased), equipment, and materials furnished to Employee by

4

Southern Land or any of the other Released Parties and transfer all Southern Land Company paid organizational memberships and periodicals to another Southern Land Company employee.

9.  In further consideration for the above, Employee agrees that Employee will not, individually or on behalf of or through others, induce, solicit, recruit or encourage, or attempt to induce, solicit, recruit or encourage any employee of Southern Land to terminate his or her employment relationship with Southern Land or to work for Employee or any person or entity with whom Employee is connected in business for a period of one (1) year after the execution of this agreement.

10. Employee agrees that Employee will refrain from all conduct, verbal or otherwise, that disparages or damages or could disparage or damage the reputation, goodwill, or good standing in the community of Southern Land or any of the Released Parties.

11. Nothing in this Agreement is intended to or shall be construed as an admission by Southern Land or any of the other Released Parties that it violated any law, interfered with any right, breached any obligation or otherwise engaged in any improper or illegal conduct with respect to Employee or otherwise, the Released Parties expressly denying any such illegal or wrongful conduct.

12. EMPLOYEE REPRESENTS AND ACKNOWLEDGES THAT HE UNDERSTANDS THE TERMS AND EFFECT OF THIS AGREEMENT, THAT HE HAS BEEN GIVEN THE OPPORTUNITY TO REVIEW AND CONSIDER THIS AGREEMENT, THAT HE HAS REVIEWED THIS AGREEMENT PRIOR TO ITS EXECUTION, AND THAT HE IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

13. This Agreement embodies the entire agreement and understanding of the parties with regard to the matters described herein and supersedes any and all prior and/or contemporaneous agreements and understandings, oral or written, between the parties.

14. This Agreement shall be construed and interpreted in accordance with the laws of the State of Tennessee.

15. The parties agree that this Agreement may be modified only in writing, and any party's failure to enforce this Agreement in the event of one or more events which violate this Agreement shall not constitute a waiver of any right to enforce this Agreement against subsequent violations.

16. Employee and Southern Land agree that any and all disputes between them (or between Employee and any Released Party) that cannot be amicably settled shall be resolved solely and exclusively by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA")

(or any successor thereof) where such rules are not in conflict with the provisions of the Agreement or with any applicable statutes or regulations. Arbitration shall take place in Williamson County, Tennessee at a time and place appointed by the arbitrator.

17. This Agreement, subject to the provisions of paragraphs 5(d) and (e) above, is effective following execution of this Agreement by both parties. This Agreement may be executed in counterparts.

**THE PARTIES STATE THAT THEY HAVE READ THIS AGREEMENT, THAT THEY UNDERSTAND EACH OF ITS TERMS, AND THAT THEY INTEND TO BE BOUND BY THE AGREEMENT.**

**Cassie Rakoczy**                                **Southern Land Company, LLC**


_____          By: _____

                                          Title: _____

Dated: _____, 2014                    Dated: _____, 2014


Cassie Rakoczy: Separation Agreement

13141345.1 (OGLETREE)

6