IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| CASSANDRA RAKOCZY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:14-cv-01903 |
| ) | |
| SOUTHERN LAND, LLC, ) | |
| ) | |
| and ) | |
| ) | |
| NOLAN CHIP BRADLEY, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

This is an action for wrongful retaliatory discharge under Tennessee common law, wrongful retaliatory discharge under the Tennessee Public Protection Act or Tennessee Whistleblower Statute, wrongful termination in violation of the Tennessee Human Rights Act, intentional infliction of emotional distress, negligent infliction of emotional distress, civil conspiracy, intentional interference with an at-will employment, and conversion brought by Plaintiff, Cassandra Rakoczy, against the above-named Defendants.

**PARTIES**

1. Plaintiff, CASSANDRA RAKOCZY, is an individual, *sui juris*, and a resident of Thompson Station, Williamson County, Tennessee.

1

2. Defendant, SOUTHERN LAND COMPANY, LLC, (hereinafter "Defendant Southern") is an active, for-profit company organized under the laws of Tennessee (SOS # 000296391) with its principal office at 1550 W. McEwen Drive, Suite 200, Franklin, TN 37067.

3. Defendant, NOLAN CHIP BRADLEY (hereinafter "Defendant Bradley"), is an individual and resident of Franklin, Williamson County, Tennessee.

## FACTUAL ALLEGATIONS

4. This is an action for monetary damages against Defendants.

5. Plaintiff was an employee of Defendant Southern and worked predominantly as a bartender at the Westhaven Golf Club (hereinafter "Westhaven") located at 4000 Golf Club Lane, Franklin, TN 37064. Westhaven is owned by Defendant Southern.

6. Plaintiff began working for Defendant Southern on August 21, 2012.

7. Defendant Bradley was Plaintiff's supervisor upon employment and is the current Food and Beverage Director of Westhaven.

8. Over time, Plaintiff began to feel uncomfortable with the behavior of the Westhaven management, particularly Defendant Bradley.

9. Westhaven management directed the bartenders, including Plaintiff, to be conscious of and to not speak of alcohol being given to and consumed by minors at Westhaven, and directed Plaintiff to serve clearly intoxicated patrons and to serve alcohol to patrons in to-go cups to take with them on the road.

10. Plaintiff further discovered evidence that Westhaven management was unlawfully taking tips that were intended for Plaintiff and the other bartenders and servers.

2

11. Plaintiff also observed Westhaven management turn away well-qualified applicants from employment because of their age or attractiveness. Defendant Bradley specifically mentioned to Plaintiff that the only reason she was able to keep her job with Westhaven was because Plaintiff did not look like she was forty (40) years of age.

12. Plaintiff was constantly threatened by Westhaven management with losing her job if she did not abide by Westhaven management's instructions. Plaintiff felt so uncomfortable with the practices of Westhaven management that on March 17, 2014 Plaintiff had a meeting with Defendant Southern's human resources director, Becca Reilly (hereinafter "the Meeting"). In this Meeting, Plaintiff disclosed to Ms. Reilly the unlawful conduct being performed by Westhaven management. Ms. Reilly assured Plaintiff that she would suffer no adverse consequences for reporting Westhaven management's unlawful behavior.

13. Prior to Plaintiff's Meeting with Ms. Reilly, Plaintiff was treated well by Westhaven management, and was even named employee of the month for February 2013. But, in the months following the Meeting, Plaintiff's treatment by Westhaven management steadily worsened. During the period after the Meeting, Plaintiff was subject to inappropriate comments and verbal abuse by her supervisors (including being constantly yelled at by Defendant Bradley), was frequently reassigned from her usual and higher-paying bartending post to the lower-paying serving posts, was no longer assigned to the lucrative task of working events and parties, and was prevented from receiving the employee 401k benefit. Additionally, Westhaven members would curse at the Plaintiff when she would serve them drinks from the bar.

14. In April 2014, Plaintiff injured her back. Instead of using the injury as an opportunity to show Plaintiff compassion, Westhaven management used Plaintiff's back injury as an opportunity to further

3

Case 3:14-cv-01903   Document 17   Filed 11/20/14   Page 3 of 20 PageID #: 211

punish Plaintiff for reporting Westhaven management's unlawful conduct. Plaintiff requested permission to continue working after her injury. But instead, Westhaven management forced her to take a leave of absence from work under the Family Medical Leave Act. Plaintiff's approved leave began on April 8, 2014 and lasted until May 2, 2014. Immediately after Plaintiff returned to work from her leave, Plaintiff was further punished by Westhaven management by being assigned double shifts.

15. Plaintiff additionally began experiencing disparate treatment because of her age. Plaintiff turned forty (40) in November 2013. Upon information and belief, once Plaintiff turned forty, Defendant Bradley told Westhaven staff that he wanted someone "younger and blonder" working behind the bar. Shortly after, Plaintiff began losing her bartending shifts to a tall, blonde, former model named Emily.

16. After Plaintiff's meeting with Ms. Reilly, Westhaven management conducted a survey of Westhaven club members regarding the adequacy of Plaintiff's work as a bartender. Upon information and belief, instead of following proper methods for designing reliable scientific surveys, Westhaven management cherry-picked the survey participants in order to create a pretense that could be used as a justification to terminate Plaintiff. Immediately after the survey was taken, Plaintiff was terminated on June 10, 2014. Ms. Reilly, Defendant Bradley, and Richard Pavlasek (Director of Golf Operations at Westhaven) were all present in Mr. Pavlasek's office upon Plaintiff's termination. Mr. Pavlasek exited the office at the same time as Plaintiff entered the office where Plaintiff was immediately terminated.

17. On the day of Plaintiff's termination, at 10:09 AM, Westhaven placed an advertisement on an internet site known as "Craigslist" seeking to hire a bartender for the club. (*See Exhibit A)*. Plaintiff, however, was not terminated until 4:35 PM that day.

18. Upon Plaintiff's termination, Defendant Southern took the unusual step of offering Plaintiff, who served as a bartender, a severance offer of two weeks pay if Plaintiff agreed to sign a "Confidential

Separation Agreement and General Release" (hereinafter "the Agreement") (*See Exhibit B*). Through the Agreement, Plaintiff is asked to waive an extensive list of legal claims against Defendant Southern, including claims for tortious or wrongful discharge, retaliation or retaliatory discharge, and claims under the Age Discrimination in Employment Act. The Agreement additionally contains broad prohibitions against disclosing confidential information about Westhaven and the activities that occurred at Westhaven and a non-disparagement clause designed to further limit Plaintiff's ability to discuss Westhaven with anyone.

19. Immediately upon Plaintiff's termination, Plaintiff was replaced by a twenty-four (24) year old bartender named Allysa Forrest.

20. As a result of her termination, Plaintiff experienced many severe mental injuries. Plaintiff experienced severe public embarrassment on the day she was terminated, as she was the only one of her colleagues who didn't know that she would be terminated that day. Plaintiff was subject to whispering by her co-workers about her, when Plaintiff had no idea about her termination. Plaintiff experienced extreme embarrassment in the manner in which her termination was conducted, as Plaintiff was the lead bartender and her termination was extremely public and embarrassing for her as a leader. Plaintiff also experienced an extreme amount of stress, as Plaintiff is a single mother of two children. Plaintiff experienced extreme stress and anxiety from the fear that she would not be able to financially support her children as a result of her termination. Plaintiff also had many sleepless nights because of this extreme stress and fear.

21. Plaintiff also suffered a depression as a result of her termination. Plaintiff wished to seek treatment for her depression, but, because she lost her insurance benefits on the day of her termination, Plaintiff could not afford to seek treatment for her depression.

5

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION - RETALIATORY DISCHARGE IN VIOLATION OF TENNESSEE PUBLIC PROTECTION ACT OR WHISTLEBLOWER STATUTE

### (By Plaintiff against Defendant Southern)

22. Plaintiff incorporates and reasserts paragraphs 1-21 above.

23. The Tennessee Public Protection Act, also known as the Tennessee Whistleblower Statute, provides that "no employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b). In order to establish a *prima facie* case under the Tennessee Public Protection Act, a plaintiff must show that they were an employee of the defendant employer; plaintiff refused to participate in, or remain silent about, illegal activities performed during the employment; plaintiff was terminated; and there exists an exclusive causal relationship between plaintiff's refusal to participate in or remain silent about illegal activities and plaintiff's termination. Counce v. Ascension Health, 2010 Tenn. App. Lexis 178 (Tenn. Ct. App. March 8, 2010).

24. Plaintiff was an employee of Defendant Southern, and began employment on August 21, 2012, in which Plaintiff worked as a bartender for Westhaven.

25. Plaintiff refused to participate, or remain silent about, the illegal activities of Defendant Southern including being instructed to be conscious of and not speak of alcohol being given to and consumed by minors at Westhaven, serving clearly intoxicated patrons, and serving alcohol to patrons in to-go cups to take on the road. These activities are in violation of Tennessee liquor laws, specifically Tenn. Code Ann. § 57-4-203(b) and (c). Plaintiff refused to remain silent about these illegal activities, and reported them to Defendant Southern's human resource director on March 17, 2014.

26. Plaintiff additionally refused to remain silent about Westhaven's action of taking the bartenders and servers tips for service which is illegal conduct under the Fair Labor Standards Act (hereinafter "FLSA"). Subsection 203(m) of the FLSA only allows employers to take tip credits toward the wage paid to "tipped employees". 29 U.S.C. § 203(m)(1994). Subsection 203(m) of the FLSA provides that "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(1994). Since Westhaven's management were not employees "who customarily and regularly receive tips", Plaintiff and other bartenders and servers were entitled to their tips, and the taking of those tips by Westhaven management was unlawful. Plaintiff refused to remain silent about these illegal activities, and reported them to Defendant Southern's human resource director on March 17, 2014.

27. Plaintiff was terminated on June 10, 2014.

28. An exclusive causal relationship exists between Plaintiff's refusal to participate in or remain silent about Defendant Southern's illegal activities and Plaintiff's termination in that, prior to Plaintiff's Meeting with Ms. Reilly, she was a valued employee evidenced by Plaintiff receiving employee of the month in February 2013. After Plaintiff's Meeting with Ms. Reilly, however, the Westhaven management mistreated Plaintiff by refusing to give Plaintiff her usual higher-paying bartending shifts, preventing Plaintiff from receiving the employee 401k benefit, and no longer assigning the more lucrative task of working events and parties. And as a result of the Meeting, Plaintiff was ultimately terminated.

29. Plaintiff requests damages against the above named Defendant in an amount to be determined at trial, including, but not limited to, reasonable attorney fees and costs as permitted by Tenn. Code

7

Ann. § 50-1-304(d)(2). Plaintiff additionally requests punitive damages as permitted in Tennessee for retaliatory discharge claims based on Defendant Southern's reprehensible conduct.

### SECOND CAUSE OF ACTION - RETALIATORY DISCHARGE IN VIOLATION OF TENNESSEE COMMON LAW

### (By Plaintiff against Defendant Southern)

30. Plaintiff incorporates and reasserts paragraphs 1-21 above.

31. Tennessee has recognized a common law action for retaliatory discharge. Crews v. Buckman Labs. Int'l, 78 S.W.3d 852 (Tenn. 2002). In order to establish a *prima facie* case for retaliatory discharge under Tennessee common law, the plaintiff must show "that an employment-at-will relationship existed, the plaintiff was discharged, and that the reason for the plaintiff's discharge was that the plaintiff attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision, and that a *substantial factor* in the employer's decision to discharge plaintiff was the plaintiff's exercise of protected rights or plaintiff's compliance with clear public policy." Counce v. Ascension Health, 2010 Tenn. App. Lexis 178 (Tenn. Ct. App. March 8, 2010).

32. Plaintiff did have an employment-at-will relationship with Defendant Southern that began on August 21, 2012, in which Plaintiff worked as a bartender for Westhaven.

33. Plaintiff was terminated on June 10, 2014.

34. When Plaintiff attempted to exercise her right to report Westhaven activities that clearly violated public policy, Plaintiff was subject to inappropriate comments and verbal abuse by her supervisors. Westhaven management also refused to give Plaintiff her usual higher-paying bartending shifts, prevented Plaintiff from receiving the employee 401k benefit, and no longer assigned her to the

more lucrative task of working events and parties. Plaintiff was ultimately discharged due to her attempt to exercise her right to report Westhaven's illegal activities that are a clear violation of public policy.

35. Plaintiff's exercise of her right to report Westhaven's violation of public policy was a substantial factor in Defendant Southern's decision to terminate Plaintiff, evidenced by the short time that lapsed between Plaintiff's Meeting with Ms. Reilly and Plaintiff's termination, as well as the fact that Plaintiff was treated well and was respected by Westhaven management before Plaintiff's Meeting with Ms. Reilly, and was even named employee of the month in February 2013.

36. Plaintiff requests damages against the above-named Defendant in an amount to be determined at trial for Defendant Southern's retaliatory discharge based on Plaintiff's attempt to exercise her right to report Westhaven management's illegal conduct. Plaintiff additionally requests punitive damages as permitted in Tennessee for retaliatory discharge claims based on Defendant Southern's reprehensible conduct.

## THIRD CAUSE OF ACTION - WRONGFUL TERMINATION IN VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT

**(By Plaintiff against Defendant Southern)**

37. Plaintiff incorporates and reasserts paragraphs 1-21 above.

38. Tennessee recognizes a claim for wrongful termination in violation of the Tennessee Human Rights Act. Tenn. Code Ann. § 4-21-401 states that it is a discriminatory practice for an employer to "fail or refuse to hire or **discharge** any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, **age**, or national origin." Tenn. Code Ann. § 4-21-401(a)(1) (*emphasis added*).

39. In order to establish a *prima facie* case of age discrimination under the Tennessee Human Rights Act, a plaintiff must show that the plaintiff was a member of the protected class (being over the age of forty (40)), plaintiff was subjected to adverse employment action, plaintiff was qualified for the position, and plaintiff was replaced by a younger person. McKinna v. Lasco, Inc., 1997 Tenn. App. LEXIS 200 (Tenn. Ct. App. Mar. 20, 1997) (*citing* McDonnell Douglas v. Green, 411 U.S. 792 (1973)). Cases that contain an action for age discrimination in employment are limited to plaintiffs who fall into the forty (40) to seventy (70) year age group. Tenn. Code Ann. § 4-21-126(a).

40. As of November 2013, and during the course of her employment, Plaintiff was the age of forty (40) years old, and is thus a member of the class that the Tennessee Human Rights Act is intended to protect.

41. Plaintiff was subject to adverse employment action in that, after Plaintiff had turned forty (40), upon information and belief, Defendant Bradley had informed Plaintiff that the Westhaven management wanted someone "younger and blonder" to work behind the bar at the Westhaven Golf Club. Westhaven management subsequently hired a young, tall, blonde, and former model named Emily. After the hiring of Emily, Plaintiff lost a majority of her bartending shifts, which Plaintiff had previously worked before the hiring of a younger bartender, causing Plaintiff to be assigned to the lower-paying server duty.

42. Defendant Southern's advertisement for a replacement bartender placed before Plaintiff's termination additionally subjected Plaintiff to adverse employment action by Defendant Southern. (*see Exhibit A*). This advertisement indicates that personal appearance is important to Westhaven, implying Westhaven was seeking someone young and attractive, as evidenced by the fact that many well-qualified bartenders were often turned away from employment because of their age or looks.

43. Plaintiff was obviously well-qualified for the bartending shifts, evidenced by the fact that Plaintiff had been working the majority of the bartending shifts before Plaintiff turned the age of forty (40), as well as being given the employee of the month award for February 2013.

44. Upon termination, Plaintiff's job as lead server/bartender/trainer was immediately taken over by a twenty-four (24) year old girl named Allysa Forrest.

45. Plaintiff requests damages against the above named Defendant in an amount to be determined at trial for Defendant Southern's wrongful termination in violation of the Tennessee Human Rights Act. Specifically, Plaintiff requests damages for back pay lost as a proximate result of the violation, as well as the back pay from the date of her re-employment until the present. Plaintiff additionally requests equitable relief in the form of front pay.

## FOURTH CAUSE OF ACTION - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(By Plaintiff against Defendant Southern)**

46. Plaintiff incorporates and reasserts paragraphs 1-21 above.

47. Tennessee recognizes the tort of intentional infliction of emotional distress. Bain v. Wells, 936 S.W.2d 618 (Tenn. 1997). For a plaintiff to establish a claim for intentional infliction of emotional distress, the plaintiff must show that the conduct complained of must be intentional or reckless, the conduct must be so outrageous that it is not tolerated by civilized society, and the conduct complained of must result in serious mental injury. Bain, at 622.

48. Defendant Southern's conduct prior to the termination of Plaintiff was clearly intentional. The inappropriate comments and verbal abuse by the Westhaven management toward Plaintiff after Plaintiff's meeting with Ms. Reilly was intended to punish Plaintiff for her disclosure of the Westhaven

11

management's illegal conduct. Further, Westhaven management's acts of reassigning Plaintiff to lower-paying serving posts and prevention from receiving the employee 401k benefit was also intended to punish Plaintiff for her disclosure.

49. Defendant Southern's termination of Plaintiff was also intentional.

50. Defendant Southern's conduct prior to the termination of Plaintiff, including the inappropriate comments and verbal abuse, was extremely outrageous and goes beyond all bounds of decency in that no reasonable employer would subject their employees to inappropriate comments and verbal abuse after the employee disclosed the employer's illegal acts to the supervising authority. Such conduct is utterly intolerable in a civilized society.

51. Defendant Southern's termination of Plaintiff was extremely outrageous in that the cause for Plaintiff's termination was the fact that Plaintiff disclosed Westhaven management's illegal conduct to Ms. Reilly. Terminating an employee for such a reason absolutely amounts to extreme and outrageous conduct that is utterly intolerable in a civilized society.

52. As a result of Westhaven management's mistreatment of Plaintiff after Plaintiff's meeting with Ms. Reilly, Plaintiff experienced severe public embarrassment by the inappropriate comments and verbal abuse, as such actions took place in front of other co-workers, amounting to serious mental injury.

53. Plaintiff also experienced severe public embarrassment on the day she was terminated, as Plaintiff was the only one of her colleagues who didn't know she would be terminated that day. Plaintiff was subject to whispering by her colleagues about her, when Plaintiff had no idea about her termination. Plaintiff experienced extreme embarrassment in the manner in which her termination was conducted, as

Plaintiff was the lead bartender and her termination was extremely public and embarrassing to her as a leader. Such severe public embarrassment amounted to serious mental injury.

54. Plaintiff experienced additional severe mental injuries as a result of her termination. Plaintiff experienced an extreme amount of stress, as Plaintiff is a single mother of two children. Plaintiff experienced extreme stress and anxiety from the fear that she would not be able to financially support her children as a result of her termination. Plaintiff also had many sleepless nights because of this extreme stress and fear. This extreme amount of stress and fear resulted in Plaintiff experiencing serious mental injury.

55. As a result of her termination, Plaintiff also suffered a depression. Plaintiff experienced an extreme amount of sadness during this period and loss of enjoyment for life. Plaintiff wished to seek treatment for her depression, but, because she lost her insurance benefits on the day of her termination, Plaintiff could not afford to seek treatment for her depression. This depression that the Plaintiff experienced amounted to serious mental injury.

56. Plaintiff requests damages against the above named Defendant in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**(By Plaintiff against Defendant Southern)**

57. Plaintiff incorporates and reasserts paragraphs 1-21 above.

58. Tennessee recognizes the tort of negligent infliction of emotional distress. Camper v. Minor, 915 S.W.2d 437 (Tenn. 1996). As recently as February 2014, in Coleman v. Humane Soc'y of Memphis, our Court of Appeals upheld a plaintiff's claim for negligent infliction of emotional distress against his or her employer based on the theory of respondeat superior. 2014 Tenn. App. LEXIS 77

13

(Tenn. Ct. App. Feb. 14, 2014). Tennessee courts have adopted the general negligence standard when analyzing claims for negligent infliction of emotional distress. Camper, at 446. In an action for negligent infliction of emotional distress, the plaintiff must prove the five elements of general negligence (duty, breach of duty, injury or loss, causation in fact, and proximate or legal cause) as well as serious emotional injury in that "a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case". Camper, at 446. Additionally, Tennessee courts require that the claimed injury or impairment must be supported by expert medical or scientific proof. Camper, at 446. However, if the claimed emotional injury is related to the retaliatory discharge claims of a plaintiff, the retaliatory discharge claims can serve the purpose of demonstrating the reliability of the plaintiff's claim for emotional distress. Coleman v. Humane Soc'y of Memphis, 2014 Tenn. App. LEXIS 77 (Tenn. Ct. App. Feb. 14, 2014). Further, an employee may assert a claim for negligent infliction of emotional distress against her employer if the negligent infliction of emotional distress claim is "parasitic" to the claim for retaliatory discharge, such that the negligent infliction of emotional distress claim is not a stand alone claim. Coleman v. Humane Soc'y of Memphis, 2014 Tenn. App. LEXIS 77 (Tenn. Ct. App. Feb. 14, 2014).

59. Duty is a legal obligation owed by a defendant to a plaintiff which requires the defendant to conform to a reasonable person standard of care in order to protect against unreasonable risks of harm. Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 89 (Tenn. 2000). A risk is "unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweighs the burden upon defendant to engage in alternative conduct that would have prevented the harm." Id. (*citing* McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995)).

60. Defendant Southern owed a duty to the Plaintiff to provide a work environment free from inappropriate comments, verbal abuse, and psychological abuse.

61. Defendant Southern breached its duty when it allowed Plaintiff to be subject to inappropriate comments and verbal abuse by Westhaven supervisors, and when Westhaven humiliated Plaintiff by firing her in a public fashion.

62. As a direct and proximate cause of Defendant Southern's breach of duty, Plaintiff has suffered serious mental and emotional injury in the form of extreme public embarrassment.

63. Because Plaintiff's emotional injuries are related to Plaintiff's retaliatory discharge claims against Defendant Southern, the retaliatory discharge claims serve the purpose of demonstrating the reliability of Plaintiff's claim for emotional distress.

64. Plaintiff requests damages against the above named Defendant in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION - CIVIL CONSPIRACY

**(By Plaintiff against Defendant Southern)**

65. Plaintiff incorporates and reasserts paragraphs 1-21 above.

66. In Tennessee, a civil conspiracy is "a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." Kiger v. Jennings Funeral Homes, Inc., 2011 U.S. Dist. LEXIS 704 (D. Tenn. 2011) *citing* Brown v. Birman Managed Care, Inc., 42 S.W.3d 62, 67 (Tenn. 2001). In a civil conspiracy, there is no liability unless there is underlying wrongful conduct. Levy v. Franks, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004). "It is a general rule that a conspiracy cannot be made the subject of a civil action, unless

15

Case 3:14-cv-01903 Document 17 Filed 11/20/14 Page 15 of 20 PageID #: 223

something is done which, without the conspiracy, would give a right of action." <u>Levy</u>, at 82 *citing* <u>Tenn. Pub. Co. v. Fitzhugh</u>, 52 S.W.2d 157, 158 (Tenn. 1932).

67. On the day that Plaintiff was terminated, Plaintiff walked into Mr. Pavlasek's office (Director of Golf Operations at Westhaven) with Defendant Bradley, Mr. Pavlasek, and Ms. Reilly all waiting in the office to terminate Plaintiff, with Mr. Pavlasek leaving the office as Plaintiff entered the office. These management directors conspired together to procure the termination of Plaintiff in violation of the Tennessee Human Rights Act.

68. Plaintiff further alleges that Defendant Southern and Westhaven management conspired to violate Plaintiff's rights under the Tennessee Public Protection Act or Tennessee Whistleblower Statute. Ms. Reilly, Mr. Pavlasek, and Defendant Bradley all were present in Mr. Pavlasek's office immediately prior to Plaintiff's termination, with Mr. Pavlasek leaving the office as Plaintiff entered the office who was thereafter immediately terminated, evidencing a joint decision between Westhaven management to terminate Plaintiff in violation of Plaintiff's rights under the Tennessee Public Protection Act or Tennessee Whistleblower Statute.

69. As a result of Defendant Southern and Westhaven management having committed the legally actionable tort of civil conspiracy, Plaintiff has suffered the loss of her bartending employment by Defendant Southern.

70. Defendant Southern is legally liable to Plaintiff, and Plaintiff is entitled to receive compensation from Defendant Southern for any harm and damage suffered by Plaintiff due to the tort of civil conspiracy to violate Plaintiff's rights under the Tennessee Public Protection Act, Tennessee Human Rights Act, and conspiring against Plaintiff to accomplish unlawful purposes.

16

Case 3:14-cv-01903 Document 17 Filed 11/20/14 Page 16 of 20 PageID #: 224

## SEVENTH CAUSE OF ACTION - INTENTIONAL INTERFERENCE WITH AN AT-WILL EMPLOYMENT

**(By Plaintiff against Chip Bradley in his individual capacity)**

71. Plaintiff incorporates and reasserts paragraphs 1-21 above.

72. In Tennessee, an at-will employee has a property interest in continued employment without unjustified interference by those who stand outside the employment relationship. Lyne v. Price, 2002 Tenn. App. LEXIS 461 (Tenn. Ct. App. June 27, 2002). "Where a third party intentionally and unjustifiably interferes with that employment interest by procuring the plaintiff's termination, a cause of action will lie against the third party." Lyne, at *8. A director, officer, or employee may be held liable if he seeks to advance his personal economic interest and advantages separate from the corporation's interests. Lyne, at *12. Even if a director, officer, or employee has the authority to procure a plaintiff's termination, where his actions are motivated substantially by malice or his own personal interest rather than in furtherance of his employer's interest, he stands as a third party to the employment relationship and, thus, may be held individually liable for the plaintiff's unjustified termination. Lyne, at *12.

73. Defendant Bradley was acting to advance his own economic interest and advantage by procuring Plaintiff's termination. Upon information and belief, Defendant Bradley benefitted personally from Plaintiff's discharge because Defendant Bradley would no longer be in jeopardy of Plaintiff disclosing his illegal practices of serving alcohol in a manner that violates Tennessee state liquor laws to a higher authority and causing Defendant Bradley to lose his employment. Therefore, because Defendant Bradley's actions were motivated substantially by his own personal interest rather than in furtherance of his employer's interest, he stands as a third party to the employment relationship, and may be held liable for Plaintiff's unjustified termination.

17

74. Upon information and belief, Defendant Bradley has also benefitted personally from Plaintiff's discharge because Defendant Bradley is no longer in jeopardy of Plaintiff disclosing his illegal practices of stealing tip shares in violation of the FLSA for his own benefit to a higher authority and causing Defendant Bradley to lose his employment. Therefore, because Defendant Bradley's actions were motivated substantially by his own personal interest rather than in furtherance of his employer's interest, he stands as a third party to the employment relationship, and may be held liable for Plaintiff's unjustified termination.

75. Plaintiff requests damages against the above named Defendant in an amount to be determined by a jury at trial.

## EIGHTH CAUSE OF ACTION - CONVERSION

**(By Plaintiff against Defendant Bradley in his individual capacity)**

76. Plaintiff incorporates and reasserts paragraphs 1-21 above.

77. Tennessee recognizes the intentional tort of conversion. H & M Enters. v. Murray, 2002 Tenn. App. LEXIS 261 (Tenn. Ct. App. 2002). In order to establish a *prima facie* case for conversion, a plaintiff must prove the appropriation of another's property to one's own use and benefit, by the intentional exercise of dominion or control over it, and in defiance of the true owner's rights. H & M Enters. at *7.

78. Subsection 203(m) of the FLSA only allows employers to take tip credits toward the wage paid to "tipped employees". Subsection 203(m) of the FLSA provides that "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(1994).

79. Defendant Bradley is not an employee who customarily and regularly receives tips.

80. Upon information and belief, by Defendant Bradley's actions of exercising control and taking Plaintiff's tip money and using the money for his own benefit, Defendant Bradley has committed the intentional tort of conversion.

81. Plaintiff requests damages against the above-named Defendant in an amount to be determined by a jury at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, CASSANDRA RAKOCZY, respectfully requests a jury to try this cause and further requests Judgment against Defendants, SOUTHERN LAND COMPANY, LLC and NOLAN CHIP BRADLEY, for:

A. Damages and costs associated with Plaintiff's wrongful termination in an amount in excess of $250,000.

B. That Plaintiff be awarded reasonable expenses incurred in this litigation, including reasonable attorney and expert fees.

C. That Plaintiff be entitled to amend her Complaint to include specific monetary damages based upon continued investigation and discovery.

D. That Plaintiff be allowed to amend her Complaint to include punitive damages in an amount to be determined by the jury upon an evidentiary showing of entitlement to the same.

E. That Plaintiff receives any other further and general relief as deemed appropriate by the Court.

This is the 5th day of November, 2014.

>Respectfully submitted,
>
>/s/ Theodore C. Wills
>THEODORE C. WILLS, NO. 32590
>COLE LAW GROUP
>750 Old Hickory Boulevard
>Building Two, Suite 202
>Brentwood, Tennessee 37027
>T: (615) 490-6020
>F: (615) 942-5914
>twills@colelawgroup.us
>Attorney for Plaintiff